1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - - - - X
 3
      UNITED STATES OF AMERICA,      : 25-mj-00322-JRC
 4                                   :
                                     :
 5                                   : United States Courthouse
           -against-                 : Brooklyn, New York
 6                                   :
                                     :
 7                                   : Monday, November 17, 2025
                                     : 4:00 p.m.
 8    VALMIR KRASNIQI,               :
                                     :
 9          Defendant.               :
                                     :
10    - - - - - - - - - - - - - - - - X

11         TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPEAL
            BEFORE THE HONORABLE PAMELA K. CHEN
12           UNITED STATES DISTRICT COURT JUDGE

13               A P P E A R A N C E S:

14    For the Government:    United States Attorney
                             Eastern District of New York
15                           271 Cadman Plaza East
                             Brooklyn, New York 11201
16                       BY: EMILY J. DEAN, ESQ.
                             Assistant United States Attorney
17
      For the Defendant:    MATHEW J. MARI, ATTORNEY AT LAW
18                          110 Wall Street
                            11th Floor
19                          New York, New York 10005
                        BY:MATHEW J. MARI, ESQ.
20

21
      Court Reporter:  Nicole J. Sesta, RMR, CRR, RPR
22                     Official Court Reporter
                       E-mail:  NSestaRMR@gmail.com
23
      Proceedings recorded by computerized stenography.  Transcript
24    produced by Computer-aided Transcription.

25
```

Proceedings                                    2

1      THE COURTROOM DEPUTY:  Criminal cause for a bond

2  appeal, 25-mj-322, United States versus Valmir Krasniqi.  Will

3  the parties state their appearances for the record, starting

4  with the government.

5      MS. DEAN:  Good afternoon, Your Honor.  Emily Dean

6  for the government.  To my left is FBI Special Agent Joseph

7  Costello.

8      THE COURT:  Good afternoon.  We have three

9  observing.

10      MS. DEAN:  Across from me is Assistant United States

11  Attorneys Francisco Navarro, Nomi Berenson, and Katherine

12  Onyshko, all for the government, Your Honor.

13      MR. MARI:  Mathew Mari for the defendant.

14      THE COURT:  Good afternoon to both of you.  So I

15  understand this is the government's appeal of a decision

16  granting bail to Mr. Krasniqi; is that right?

17      MR. MARI:  Yes, ma'am.

18      THE COURT:  That's how you pronounce his name?

19      MR. MARI:  Yes, ma'am.

20      THE COURT:  Let me hear from the government.

21      MS. DEAN:  Thank you, Your Honor.  As there's no

22  transcript available because this just happened, I will start

23  afresh, Your Honor.  This afternoon, the government moved

24  pursuant to 18 United States Code Section 3142(f)(2)(A) and

25  (f)(2)(B) for the detention of this defendant.

Proceedings                                              3

 1          Under A, because this defendant presents a serious

 2  risk of flight; and under B, because this defendant presents a

 3  serious risk that he will obstruct or attempt to obstruct

 4  justice, or threaten, injure, or intimidate, or attempt to do

 5  that to a prospective witness or juror.

 6          There's no condition or combination of conditions

 7  that can reasonably assure the appearance of the defendant and

 8  the safety of witnesses and jurors in the community, Your

 9  Honor.  The complaint in this case charges this defendant with

10  influencing a juror.

11          This defendant attempted with his co-conspirators to

12  bribe a juror in a criminal trial in the Eastern District of

13  New York.  That trial was before Judge Azrack.  Opening

14  statements were set to commence today with the presentation of

15  evidence.  This defendant and his co-conspirators offered a

16  juror 50 to $100,000 to return a not guilty verdict in that

17  trial.  As a result of the jury being compromised, the entire

18  panel was dismissed.  The trial was adjourned indefinitely.

19          This is a trial where the defendant faces life for

20  tens of millions of dollars of narcotics trafficking.  This is

21  a defendant with ties to Balkan organized crime, a deeply

22  serious case.  This defendant and his co-conspirators have

23  been conspiring since at least November 13th of 2025, post

24  jury selection, to bribe and pay this juror for the verdict of

25  their choice.

Proceedings                                         4

1          If I could start with our argument under (f)(2)(B),

2    the defendant should be detained based on (f)(2)(B) alone --

3          MR. MARI:  Objection, Your Honor.  May I clarify

4    something I don't understand while she's speaking before she

5    speaks?  I want to know --

6          THE COURT:  Let her finish and then you can --

7          MR. MARI:  That's the point.  If this is an appeal,

8    Judge, I've been an attorney for 49 years.  I've only been in

9    this situation once before, about 40 years ago.  But my

10   understanding, when someone appeals something, they're not

11   supposed to do it over and start from scratch and have another

12   judge have the opportunity to overrule the first judge.

13   They're supposed to be appealing something that the judge did

14   wrong.

15          So if Judge Cho made a wrong decision, they should

16   be addressing themselves to that, not to do a do-over and say

17   Judge Cho said we were wrong and maybe Judge Chen will say

18   we're right.  I think it's improper for her to go over the

19   whole thing.  I don't know if I could go over my whole thing.

20          THE COURT:  You may.  I want to hear from the

21   government all of the facts.

22          MR. MARI:  Thank you.

23          THE COURT:  Like any appeal, you start with a fact

24   section and then you can go to the law section, and the

25   applicable law here would be overruling, in theory, Judge Cho.

Proceedings                                                5

1   But I do have to have an understanding of the underlying

2   facts.  All I have right now is the complaint and the pretrial

3   services report.  So continue, and you can start from the

4   beginning, as well, Mr. Mari.  Go ahead.

5            MS. DEAN:  Thank you, Your Honor.  Starting with our

6   argument under (f)(2)(B), the defendant should be detained

7   based on (f)(2)(B) alone.  That is the obstruction of justice

8   in this case and the potential for future obstruction of

9   justice, including intimidation or worse of witnesses or

10  jurors.

11           Your Honor, there can be no clearer example of a

12  defendant that poses a serious risk of obstruction of justice

13  and a risk of juror and witness intimidation, or worse, then

14  what happened in this case.  The defendant and his

15  co-conspirators researched this juror, located him, found his

16  home address and place of employment, found someone that he

17  knew, incidentally this defendant's co-worker, and then

18  conspired to offer that juror and, in fact, did offer that

19  juror through a co-conspirator, 50 to $100,000 to return a not

20  guilty verdict in the trial I referenced earlier.

21           To approach a federal juror like this, Your Honor,

22  as you know, has potential to undermine the entire system.

23  When evaluating our argument under (f)(2)(B), I urge the Court

24  to consider that it's hard to think of a greater breach of any

25  trust that a Court can place in a defendant.  And if you add

Proceedings                                        6

1    to that the enhanced risk here because of the crime itself,

2    because of the efforts this defendant and the co-conspirators

3    already took, for the potential of retaliation against that

4    juror, or the potential of intimidating witnesses in that

5    case, which includes that juror.

6           Just today, Your Honor, during an execution of a

7    search warrant at this defendant's codefendant's home, that's

8    defendant Kupa, law enforcement found that juror's personal

9    identifying information, his government name, his home address

10   and workplace.  Defendant Kupa, just yesterday, was in this

11   defendant's home having a meeting with fellow co-conspirators

12   about bribing the juror.

13          Now, defendants Kupa and Krasniqi engaged with

14   multiple co-conspirators to effectuate bribing the juror.

15   Based on this investigation to date, there were additional

16   co-conspirators even beyond the three presented to Judge Cho

17   today that were involved.

18          Turning to (f)(2)(A), Your Honor, the evidence

19   associated with flight risk for Your Honor to consider in our

20   detention argument, Mr. Krasniqi is a lawful permanent

21   resident but not a United States citizen, who has frequent

22   international travel, including numerous trips to Albania.

23   That is particularly of note in this case, Your Honor, in

24   considering flight risk and in considering dangerousness

25   because of the nature of the trial that this defendant

Proceedings                                                        7

1    attempted to interfere with, a defendant at trial who is

2    alleged to have been involved in Balkan organized crime.

3    Defendant Kupa, his codefendant in this jury tampering case,

4    is also involved with organized crime.

5           Now, if I could detail the trips to Albania, Your

6    Honor.  This defendant traveled to Albania in August of 2025,

7    in June of 2025, in October of '24, in June through July of

8    '24, in January of '23, and in January of '22.

9           Separately, Your Honor, this defendant was born in

10   Kosovo and his parents and fiancee are there.  So he has

11   significant ties to that country, well.

12          THE COURT:  His fiancee lives outside the U.S.?

13          MS. DEAN:  Lives outside the U.S.  The defense has

14   indicated both before argument today and during argument that

15   the defendant's fiancee is intending to travel here this week

16   to live here with the defendant.  Nevertheless, that does not

17   undermine the significance of the defendant's out of the

18   country ties.

19          I describe all that to one, Your Honor, articulate

20   the risk of flight with a defendant who travels this

21   frequently to a country related to the organized crime that's

22   at issue, both in the trial case underlying the tampering and

23   with respect to the individuals that were involved in this

24   tampering, but also because at argument before Judge Cho, the

25   defense argued that these trips, these repeated trips,

Proceedings                                                      8

1   sometimes multiple times a year to Albania, were actually just

2   trips to Kosovo.

3          However, today -- they were just trips to Kosovo to

4   see his family.  But today to pretrial services, he denied

5   traveling back to Kosovo since entering the United States.

6   So, Your Honor, if, in fact, these repeated trips to Albania

7   were just trips to Kosovo, then the defendant lied to pretrial

8   services.  If they were not trips to Kosovo, then they were,

9   as they present, repeated trips to Albania.

10          Either way, Your Honor, this is repeated contact,

11  access to, and familiarity with other countries, access to

12  other countries, and repeated travel to other countries, which

13  enhances the risk of flight, particularly here where this case

14  involves Balkan organized crime.

15          Now, if I could turn to some of the evidence, Your

16  Honor.  This is additional evidence demonstrating a potential

17  for risk of flight.  To back up, some of the evidence

18  underlying the charges in this case are a number of

19  recordings, recordings in which this defendant and more than

20  one of his co-conspirators discuss meetings and plans to bribe

21  a juror.  On one such recording from November 16th, this

22  recording also demonstrates that Krasniqi was aware of

23  law enforcement presence on November 16th and changed the

24  location of a meeting between co-conspirators to evade

25  law enforcement.

Proceedings                                                    9

1          MR. MARI:  Excuse me.  Did you say this defendant
2   did that?

3          MS. DEAN:  This defendant, Your Honor.

4          THE DEFENDANT:  I was in my house.

5          THE COURT:  Hold on, folks.  Wait until you have a
6   chance to speak, and I would advise that you don't have your
7   client say anything on the record.  Let her finish and then
8   you can correct anything you think is wrong.  So you're saying
9   Mr. Krasniqi arranged to have the meeting done elsewhere
10  because he became surveillance conscious?

11         MS. DEAN:  Yes.  And that is articulated on the
12  recording, Your Honor.

13         THE COURT:  Who was the recording with?

14         MS. DEAN:  Another co-conspirator.

15         THE COURT:  Not Kupa and not, I can't say his name,
16  Fteja.

17         MS. DEAN:  Fteja, Your Honor.

18         THE COURT:  Okay.  So between Fteja and Krasniqi,
19  all of a sudden Krasnizi says let's move it because the police
20  are watching?

21         MS. DEAN:  Almost exactly, Your Honor, yes.  It was
22  Krasniqi, this defendant, who indicated a police presence and
23  said let's do this meeting at my house.

24         What followed then, Your Honor, is exactly that.
25  The defendant and two co-conspirators did that meeting at this

Proceedings                                             10

1   defendant's home.  During this meeting, which was recorded,

2   Your Honor --

3           THE COURT:  I was wondering how you did that, but

4   okay.  It's not going to be my case.  The meeting itself in

5   person was recorded?

6           MS. DEAN:  Yes, Your Honor.  The defendant and his

7   co-conspirators discussed bribing the juror.  Defendant Kupa,

8   during that meeting, said that there would be $100,000

9   available to bribe the juror for a not guilty verdict.

10          THE COURT:  So this is a November 16th meeting?

11          MS. DEAN:  That's right.  This is the meeting, just

12  yesterday, Your Honor, this is the meeting that took place at

13  this defendant's home.

14          THE COURT:  Okay.

15          MS. DEAN:  That happened at the defendant's home

16  after the defendant changed the location to evade

17  law enforcement.  I underscore the consciousness of

18  law enforcement and decision to evade, as it goes to the risk

19  of flight, Your Honor.

20          Now, one of the many reasons we say there's no

21  combination of conditions that could ensure his return to

22  court and the safety of the community and prevent the

23  obstruction of justice, the further obstruction of justice, is

24  the way in which the defendant used his home and his workplace

25  to commit these crimes.

Proceedings                                              11

1          Before Judge Cho, defense argued that the defendant

2    just wants to go to work and home, work and home.  But these

3    were the very places where the defendant committed these

4    crimes.  He also committed them by phone.

5          For instance, Your Honor, as I just described, he

6    used his own home to host his co-conspirators for a meeting in

7    which bribing the juror was discussed, explicitly, including

8    use of the juror's first government name.  Now, his workplace

9    is another place where he had conversations with a

10   co-conspirator arranging for meet ups to discuss further and

11   plan to bribe the juror.

12         THE COURT:  This is the Positano restaurant?

13         MS. DEAN:  That's correct.  He had conversations

14   there with a co-conspirator.  He also conspired with Fteja,

15   who he works with.  So he found a co-conspirator in his

16   colleague at work.  Therefore, what is often a positive, Your

17   Honor, a stable home, a stable job, are negatives here.  His

18   workplace, I want to get into this a little further as I did

19   before Judge Cho, his workplace is a known meeting place for

20   members and associates of Italian and Albanian organized

21   crime.

22         Just this weekend, during surveillance,

23   law enforcement observed a member of Italian organized crime

24   present at the location.  These ties to organized crime

25   enhance the defendant's risk of flight and dangerousness.

Proceedings                                    12

1    They also demonstrate financial resources.  Now, the crime

2    itself here demonstrates financial resources.  That $100,000

3    can come up with to bribe a juror.  That is at the base of the

4    conspiracy that the defendant was a part of.  And so just the

5    crime itself demonstrates those resources, but a network of

6    individuals associated with organized crime further

7    demonstrates that.  That goes to risk of flight, Your Honor.

8            Also, one of the arguments advanced by defense was

9    his family has ties to the community.  Specifically mentioned

10   was that his brother manages a restaurant also, a different

11   restaurant besides Positano.  Your Honor, that restaurant is

12   owned by a Genovese captain, another link to Italian organized

13   crime.

14           My points there are the same.  It further builds out

15   the defendant's network.  His association with Italian and

16   Albanian organized crime heightens his dangerousness to the

17   juror and to the community; and because of the resources that

18   come with it, heightens his risk of flight.

19           THE COURT:  Let me ask you, too.  It says here that

20   the brother is the one posting the bond in theory.

21           MS. DEAN:  Yes, Your Honor.  I will get to that.

22   But actually, let me address that now because the bond issue

23   is one of the reasons for our appeal.  Where our position is

24   that there is no combination of conditions that would be

25   sufficient, certainly the bond just approved today by Judge

Proceedings                                    13

1   Cho is insufficient.  The defense offered two suretors, two

2   brothers to sign a surety for this defendant.

3           What was revealed during oral argument before Judge

4   Cho is that both of those brothers were present in the

5   defendant's home during the meeting with co-conspirators, on

6   November 16th, just yesterday.

7           THE COURT:  That came out during the bond hearing,

8   did you just say that?

9           MS. DEAN:  Yes.  That these are potential witnesses,

10  not potential, these are witnesses.  That was explained by the

11  defense that the brothers actually were present for the

12  meeting.

13          THE COURT:  And they're both managers?

14          MR. MARI:  Not true.  That's just not true.

15          THE COURT:  Hang on.  You'll have your chance to

16  respond.  But both brothers are managers at the same

17  restaurants that you say is --

18          MS. DEAN:  Just one, Your Honor.

19          THE COURT:  Go ahead.

20          MS. DEAN:  The defense proffered that both were in

21  the home during the meeting, and the defense agreed could be

22  witnesses.  For those brothers to be suretors is completely

23  inappropriate, Your Honor, and Judge Cho agreed.  Judge Cho

24  agreed and said there was no appropriate suretor.  During the

25  course of the argument, the defendant expressed that he could

Proceedings                                                         14

1    put up his own $100,000 bond.

2           Your Honor, I have to underscore that is the exact

3    amount that was available to bribe the juror as relayed on the

4    recording yesterday, November 16th.

5           THE COURT:  Okay.

6           MS. DEAN:  However, additionally, Judge Cho's ruling

7    today was that the defendant need not put up anything today

8    and could have the next week to come up with the appropriate

9    suretor, because the brothers were deemed inappropriate.  We

10   have no information about what suretor that might be.  This

11   amounts to the defendant being released on his own

12   recognizance.  He's just let out.

13          This is after -- I can't underscore the seriousness

14   of this crime.  It's a shocking crime to have the nerve, to

15   conspire with other people like this to approach a juror and

16   offer him a bribe, and say you're on jury duty this Monday, we

17   will give you money, you will get paid to vote not guilty.

18   You just have to write not guilty, Your Honor, is what this

19   juror was told.

20          To release this defendant on his own recognizance

21   with the risk of obstruction of justice, with the risk of

22   flight, with the dangerousness potential to the community, but

23   specifically to the juror and witnesses in this case, it's not

24   an appropriate bond, Your Honor.  Although, we would oppose

25   bond at all in this case, but this is certainly not

Proceedings                                            15

1   appropriate.  So I wanted to just address Your Honor's

2   question right away about the $100,000 and the brothers as

3   suretors issue.

4          Right now as it stands, the defendant is released

5   with the expectation that in one week's time he will come up

6   with a suretor to put up a $100,000 bond in a conspiracy where

7   $100,000 is being bandied about to bribe a juror.

8          THE COURT:  Can I ask an obvious question, though?

9   The defendant owns a property that's worth about 1.1 million?

10          MS. DEAN:  I don't know the value, Your Honor, but

11   he does own a property.

12          THE COURT:  Well, I'm looking at the pretrial

13   report.  I'm not suggesting that the bond is appropriate here,

14   don't get me wrong, I just want to understand was there a

15   discussion about a secure bond of some people's property.

16          MS. DEAN:  I don't recall discussion about property

17   being put up.  I don't think that that was offered.  We would

18   oppose that, but understood, Your Honor, that is something the

19   defense could have offered.  I don't recall that being

20   offered.

21          So we appeal Judge Cho's decision of this particular

22   bond, as well as the ruling as a whole, and certainly this

23   bond.  If I could just go back to the weight of the evidence

24   as another indicator of flight risk.  This defendant has never

25   served time in jail.  He now faces ten years for this crime.

Proceedings                                                      16

1    The weight of the evidence is extremely strong.  There are

2    recordings in which he participates in conversations about

3    bribing a juror, the defense tried before Judge Cho to

4    undermine the value of those recordings based on excerpts in

5    the complaint.

6              There are more recordings than just excerpted in the

7    complaint.  There's also a witness who has informed

8    law enforcement that this defendant approached him, and that

9    this defendant solicited him to engage in the bribing of a

10   juror.

11             There are tolls, Your Honor, phone records, where

12   this defendant is calling a co-conspirator on the day the

13   juror was approached at all the relevant times, both before

14   and after the approach as laid out in the paragraph of the

15   complaint.  I can direct Your Honor to that paragraph.  I

16   don't want to do it from memory.  I think that's paragraph

17   six, Your Honor.  Those are this defendant's phone records

18   showing his involvement in the crime on that day.

19             Just today, after the search warrant was executed on

20   this defendant's home and his devices were recovered, evidence

21   from his own phone demonstrates that the defendant was setting

22   up a November 13th meeting between co-conspirators and a

23   November 16th meeting between co-conspirators.  So when the

24   defendant argued to Judge Cho that the complaint does not show

25   strong evidence, of course, as Your Honor understands, the

Proceedings                                                    17

1   complaint is sufficient to lay out probable cause for arrest

2   and there is more to this case, Your Honor.  That's why I

3   proffer that, as well.

4          All of these things, the weight of the evidence,

5   facing this kind of time, enhances his risk of flight.  If I

6   could just have one moment, please.

7          THE COURT:  I have a few questions.

8          MS. DEAN:  Okay.

9          THE COURT:  One is, is there any evidence, if you

10  feel free to discuss it, connecting Mr. Krasniqi to the drug

11  defendant?

12         MS. DEAN:  No, Your Honor, not at this time.

13         THE COURT:  Is the government's theory, if you feel

14  like disclosing it, that Mr. Kupa is the connection?  If you

15  want to discuss that.  I'm trying to get a sense of these

16  three defendants who are in this complaint, what their

17  respective roles and culpability were.

18         Let me just say this.  Reading the complaint, it

19  seems pretty clear to me that Mr. Krasniqi and Mr. Kupa are

20  the main movers, or conspirators, masterminds, whatever you

21  want to call them, and Mr. Fteja was the vehicle, the sort of

22  convenient go between.  I asked you before we started what

23  happened with the other two defendants in terms of the bail

24  issue, and you said Mr. Fteja was released on bond and Mr.

25  Kupa was detained by order of Judge Cho, I presume.

1          MS. DEAN:  Yes, Your Honor.

2          THE COURT:  So I'm just trying to fix Mr. Krasniqi

3    in this trio, or in the bigger conspiracy to tamper with the

4    juror.

5          MS. DEAN:  Yes, Your Honor.  I think this is almost

6    verbatim what I said to Judge Cho.  This defendant -- first,

7    your evaluation, Your Honor, of the roles, we agree with.  But

8    what I said to Judge Cho is this defendant connected defendant

9    Fteja and defendant Kupa.  Put simply, this crime cannot

10   happen without this defendant.

11          What's more, the recordings of the meeting at the

12   defendant's home demonstrate, because defendant Kupa said so,

13   that there are Albanians in the Bronx behind the payment of

14   the juror, that he will get cash, and that these people are

15   Albanians in the Bronx.  While he did not say organized crime,

16   Your Honor, there's certainly sufficient context in this case

17   to understand that organized crime is likely involved here, as

18   it is in the trial before Judge Azrack.

19          THE COURT:  That's what I was going to ask you.

20   That defendant is an Albanian drug dealer or suspected member

21   of some Albanian gang?

22          MS. DEAN:  I would say Balkan, Your Honor.  He's a

23   member of -- I shouldn't say member.  He's involved in Balkan

24   organized crime.  If I could have one moment.

25          To put a finer point on it, he's involved in the

Proceedings                                          19

1   shipping of narcotics, large amounts of narcotics, from South

2   America to the Balkans.

3           THE COURT:  Is it correct, also, with respect to

4   risk of flight that the defendant would be deported if

5   convicted of this crime?  You say he's an LPR right now.  If

6   he's convicted, he'll be deported?

7           MS. DEAN:  Yes, Your Honor.

8           THE COURT:  Well, you could -- poor Mr. Mari, I hear

9   you sighing a lot.  But that's a relevant factor in terms of

10  risk of flight.  In other words, at the time of trial if the

11  defendant perceives that he'll lose his ability to stay here,

12  that might give him a greater incentive to flee.  The other

13  thing I wanted to ask is -- those were the questions I wanted

14  to ask.  Mr. Mari, let me hear from you.

15          MR. MARI:  Okay, Judge.  I'm sorry for my outburst.

16          THE COURT:  That's all right.  You're a very

17  expressive human being.

18          MR. MARI:  As I said before, I'm not an appeal

19  lawyer.  I've been a lawyer for a long time.  This is the

20  second time this has happened in 49 years that a prosecutor

21  has gone against the judge and said we're appealing this.

22  Great.  That's wonderful.

23          THE COURT:  It happens here more often than you

24  think.

25          MR. MARI:  But my understanding with this proceeding

Proceedings                                                    20

1   is, and I want to start off with this, is that I'm not

2   supposed to make my whole argument all over again and knock

3   everyone to sleep in this courtroom.

4            THE COURT:  No, you should.

5            MR. MARI:  Maybe I could, maybe I will.  To start

6   out with, what we're talking about here is one issue.  Did

7   Judge Cho make such a mistake an hour ago that you have to

8   reverse him.  He just made a mistake.  That's what we're

9   dealing with.  We're not doing a do over.  Let's play the game

10  over because they lost.

11           We have to play, again, until we win.  Keep playing

12  it until we win.  That's the government's philosophy.  Anyhow,

13  Judge Cho rendered a decision on this case, and there's a

14  record of why he rendered that decision.  So I say to you,

15  Your Honor, I rely to start off with, if I could do nothing

16  else, I rely on Judge Cho's decision and rely on the

17  transcript of the previous proceeding.

18           THE COURT:  Hang on, though.  The problem we have

19  here is timing.  I'm not going to have a copy of the

20  transcript, nor are you.  So perhaps you could tell me --

21           MR. MARI:  I will.  Now, Judge, what I'm going to

22  try to do is only respond to what she said here now, not to

23  respond to the whole thing but then maybe I'll have to go back

24  in time and repeat myself as to what I said in front of Judge

25  Cho, which I don't quite remember all of it.

Proceedings                                    21

1      Regarding what was said here in front of Your Honor,

2  she just keeps describing the case as this is a serious threat

3  to obstruct justice.  No one argues with that.  The question

4  is whether this man, sitting next to me, was involved in that

5  conspiracy and whether his involvement merits the very harsh

6  condition we call detention.  Judge Cho decided that whatever

7  my client is accused of didn't measure up to detention.

8      THE COURT:  The criteria is not whether he committed

9  the crime or not, although the fact that there's probable

10  cause to believe he did is relevant, and the strength of the

11  government's evidence is relevant.  The factors are whether or

12  not there's a risk, a serious risk of flight, or a serious

13  risk of danger to the community.  That's really what I have to

14  address.

15      The fact that the evidence is strong, and it does

16  appear to me so, Mr. Mari, is a factor in terms of his risk of

17  flight and risk of danger.

18      MR. MARI:  And Judge Cho considered everything she

19  said carefully and rejected it.  She says that there are no

20  conditions that could ensure the safety of society if this man

21  is not held on detention.  That's not true, Judge, and Judge

22  Cho actually picked the conditions himself.  I suggested to

23  him that we follow the conditions of pretrial services, and

24  also said to him if that's not good enough, Judge, this

25  defendant is willing to go above and beyond that.

Proceedings                                      22

1          If you want to put him on house arrest, all he wants

2    to do is get up in the morning in Staten Island and go to work

3    in Brooklyn, and then go back home.  I left that open for

4    Judge Cho to decide, and he decided ultimately that a $100,000

5    surety bond secured by one financially responsible person was

6    enough in this case.  He decided that.  That wasn't my

7    package.  I left it to him and he decided it.

8          So it's not true what she says that there's no

9    circumstances that could guarantee the safety of society if

10   this man is not detained.  The defendant, in this case,

11   sitting next to me, he never -- there's no evidence that he

12   attempted to bribe any juror, that he saw a juror, that he

13   spoke to a juror.  There's nothing like that.  Maybe other

14   people, other codefendants, and she keeps constantly

15   persistently, offensively, she keeps saying that everything

16   the other defendants are alleged to have done that he does.

17         She holds him responsible for all of them.  Maybe

18   there's a legal theory to justify some of that.

19         THE COURT:  Mr. Mari, stop for one second.  I'm

20   looking at the complaint and the complaint very clearly

21   recounts conversations between your client and Mr. Fteja and

22   Mr. Kupa where they're agreeing that they're going to pay this

23   juror up to $100,000 to get an acquittal of that defendant.

24         MR. MARI:  I'm saying, Judge, that he wasn't part of

25   that conversation.  He did something.  He set up a meeting.

Proceedings                                                23

1   I'm going to going to explain why he did it, not that it makes

2   any sense why he did it, but I'm going to explain to you as I

3   did to Judge Cho why he set up a meeting between these people

4   but he wasn't part of their meeting, nor were his brothers

5   part of the meeting.

6           That's why they might be able to be witnesses for

7   him to say they were there.  He was there, but they were not

8   part of the meeting.  He hosted a meeting in his house for a

9   co-worker and a good customer in his restaurant.

10          THE COURT:  And Mr. Kupa.  But there's a statement

11  that Mr. Krasniqi says this has to be done.  Right?

12          MR. MARI:  No.  They're twisting that around.  When

13  he says this has to be done, he means to say this meeting has

14  to be done.  Is this meeting done?  I want it to be over.  I

15  got to go.  He's not saying this is something we have to do,

16  right, guys?  We're going to do it.  We're going do bribe that

17  juror.  No, ma'am.  No, ma'am.  He's saying let's get out of

18  here.

19          This meeting, this, this is the meeting has to be

20  done.  This has to be done.  This, the meeting, has to be

21  over.  That's what he's saying.  He wants to get out of there.

22  That's for trial.

23          THE COURT:  Exactly.  I do want to understand,

24  though, because I'm looking at the complaint and obviously

25  it's interpreted.

Proceedings                                                  24

1          MR. MARI:  At first glance, yes.

2          THE COURT:  Don't interrupt me.  Hang on for a

3   second.  I just want to go back to the government for a

4   second.  I think you said, though, that you have other

5   conversations.  Do you have other recorded conversations or

6   other evidence indicating that Mr. Krasniqi was actually

7   involved, a mover of this conspiracy, or somehow otherwise

8   involved, I guess in a broader plan, to help that particular

9   drug defendant.

10         MS. DEAN:  Yes, Your Honor.  Both recorded

11  conversations and from witness information.  On a recorded

12  conversation, for instance, the meeting that we're talking

13  about at the defendant's home, he first sets up that meeting

14  between the co-conspirators at Cafe Alba.  He then, on a

15  recording, indicates the police presence and moves the meeting

16  to his own home.

17         THE COURT:  Let me just say this.  One could say,

18  well, he was concerned for these other individuals talking

19  about things, potentially not making him a co-conspirator but

20  rather somebody who was ill-advisedly trying to help other

21  people have a secret place to have a conspiratorial

22  conversation.  This is what Mr. Mari is arguing, and obviously

23  all I have before me is this one recorded conversation.

24         MR. MARI:  May I continue?

25         THE COURT:  Hold on.  I just want to hear from the

Proceedings                                        25

1   government whether there's more evidence that really

2   unequivocally, you would say, places him in the middle of this

3   conspiracy.

4         MS. DEAN:  Yes, Your Honor.  Information provided by

5   a witness that's unequivocal that this defendant was involved

6   in, soliciting co-conspirators to approach the juror to bribe

7   the juror.

8         THE COURT:  I don't want to get too far afield again

9   because it is not the most important factor but it is one.  We

10  are talking about a witness who is not the juror himself or

11  herself, right?

12        MS. DEAN:  Not the juror, Your Honor.

13        THE COURT:  Go ahead.

14        MS. DEAN:  However, may I add, Your Honor, I think

15  this is relevant to your question, when the juror was

16  approached and offered the bribe the first time, this

17  defendant was named as one of the people that the bribe was

18  coming from.

19        MR. MARI:  He never approached the juror, Judge, and

20  they have no evidence of that.

21        THE COURT:  That's not what she said.  Go ahead.

22        MR. MARI:  Judge, not that I'm summing up yet, but

23  just to make you understand what my point is, and it's a tough

24  point to swallow, this defendant is a manager of a very

25  successful restaurant.  Lots of people come in there,

Proceedings                                          26

1    organized crime, everybody comes in his restaurant.

2            If you go in his restaurant, you're going to love

3    it.  You're going to like it.  I go there almost every day.

4    I've known this guy for 12 years.  He accommodates people.

5    Should he have accommodated this situation?  Definitely now in

6    hindsight, certainly not.

7            But he accommodated a customer who said I want you

8    to get in touch with your worker who could get in touch with

9    someone for me.  And he does it all.  He does it all, not even

10   caring what it's all about and he should have cared.  He

11   wouldn't be in this situation if he was a little bit more

12   cautious instead of ignorant.

13           THE COURT:  Right.  I think the government, though,

14   characterized your client as the one who identified his

15   co-worker as the person who had a connection to the trial.

16           MR. MARI:  He sets up a meeting between his

17   co-worker and a very good customer.  Those are the

18   codefendants.

19           THE COURT:  I know.  But who identifies the

20   co-worker as the person -- the juror on the trial?

21           MR. MARI:  The co-worker is the one who knows the

22   juror.  They're from the same town, or something like that.

23           THE COURT:  You're saying that ultimately the

24   evidence is going to show that your client didn't identify Mr.

25   Fteja -- sorry.  Didn't identify Mr. Fteja as someone who knew

Proceedings                                          27

1    the juror, I guess.

2             MR. MARI:  He wasn't into the jury.  That wasn't

3    about what he knew about.  He was just reaching out to Mustafa

4    for Mr. Kupa.  He wanted to score points with Mr. Kupa, his

5    client, and get Mustafa together with him, and then later when

6    they decided, Kupa decided, not Mr. Krasniqi, Kupa decided I

7    don't want to meet in a cafe.  Can we meet in your house?  He

8    says, yes.  Hard to believe, but true.

9             THE COURT:  Fteja is the one who knows the juror

10   somehow, right, and at some point someone has to identify

11   Fteja as knowing the juror.  Did your client --

12            MR. MARI:  He didn't know that he knew the juror

13   then.  Now he understands what went down.

14            THE COURT:  So, again, we're getting a little bit

15   too much into the facts.

16            MR. MARI:  He didn't know anything about the jury

17   issue.  That's what's he's saying.  That's an issue for trial.

18   I could understand why they don't believe that.  You had a

19   meeting in your house and you don't know anything.  How dumb

20   are you?

21            THE COURT:  Most importantly, though, you're saying

22   the government's evidence is not as strong as they say it is?

23            MR. MARI:  Let's get back to what they said here to

24   you, that I disagree with.  Just because he's charged with

25   conspiracy, that doesn't mean he's guilty of everything for

Proceedings                                                                28

1    the purposes of bail.  That's what they seem to be doing.  He

2    did not -- he states to me, I'm his lawyer, I never approached

3    a juror.  They're saying yes, he did.  I'm just wondering

4    where's the evidence of that.

5              I'm saying what happened with the other defendants

6    should not be held against my client.  She keeps saying a lot

7    of bad things that the other defendants did, but yet she's

8    looping him into that.  It's not fair and not right for the

9    purposes of detention.

10             She makes a big deal over all the trips to Albania.

11   Like I said, I've known this man for 12 years.  I've met his

12   mother and father, and my wife has met his mother and father

13   on numerous occasions.  He goes back and forth.  And when we

14   say Albania, this is another thing that's kind of a colloquial

15   expression, Kosovo and Albania to Americans from Brooklyn are

16   basically synonymous.

17             When people talk about people from Kosovo, we mostly

18   refer to them all as Albanians, like Russians and Ukrainians

19   before the Ukraine Russia war.  They used to refer to the

20   Ukrainians as Russians.  They're not Russians.  Kosovo and --

21   people from Kosovo are not from Albania, but they're so close

22   that we tend to view them as the same.

23             His parents speak Albanian.  When they came to this

24   country, and I met them, they went to all Albanian restaurants

25   and Albanian this and Albanian that.  I think you have to

Proceedings 29

1  actually go to Albania in order to go to Kosovo on a trip.
2  She's making him like a worldwide traveller.

3          Here's a guy who's 35-years old, Judge, and never
4  been arrested for spitting on the sidewalk, not in Brooklyn,
5  not in Staten Island, not in Kosovo, not in Albania.  He's a
6  totally legitimate guy up until yesterday, up until this
7  morning.

8          Now he's accused of all this.  He made a mistake to
9  get involved with reaching out for people, getting involved.
10 He's saying I didn't know about the juror.  That's an issue
11 for trial.  They make a big deal about Albania.

12         She keeps talking about recordings.  I'm wondering
13 why they're not in the complaint.  The complaint only says
14 that one thing when he says -- let me get it again.  He says
15 they have excerpts, and they say the only thing they attribute
16 to him, "this has to be done."  Right?  So they try to make
17 that phrase oh, this has to be done, the crime has to be
18 committed.  That's not true.  He's saying this meeting has to
19 be done.  Get out of my house.  I'm tired, get out of here.
20 This meeting has to be done, right?  Am I right?  It's done.
21 You're finished.

22         Anyhow, Judge, we all have our interpretations and
23 Judge Cho decided to interpret not in favor of the government,
24 but in favor of the defendant.  Getting back to what they said
25 here today, and I'm trying to move quickly, she keeps talking

Proceedings                                        30

1   about defendant Kupa, and she makes it sound like everything

2   Kupa does my client is doing.  Well, Judge Cho remanded Kupa

3   and he gave Kupa what he deserved based on what she's saying.

4   But she's attributing everything of Kupa to be part of what my

5   client is doing.  That's why Judge Cho rejected her argument

6   and said, I'm going to put this guy on $100,000 bond.  No

7   detention.  That's a big difference, Your Honor.

8          They keep talking about where he works, a Genovese

9   captain.  I know all about where he works.  The people who own

10  that, that restaurant could be called a lot of things.  You

11  call anybody whatever you feel like, especially if you don't

12  care, and like you're a racist.  No Genovese captain owns that

13  place.  I've been going in there for 20 years, and I know

14  there's a lot of people who might be described as gangsters.

15  They like to go out and they like to eat and they like to eat

16  good food.

17         You're going to see plenty of them in his

18  restaurant.  That's like a guilt by association that shouldn't

19  be used to detain this man.  It's obscene, I think.  I'm

20  sorry.  I have to say that.

21         With regard to the brothers, she said that they were

22  present for the meeting.  They were present in the house but

23  not present for the meeting.  That's what I'm trying to

24  define.  There's a meeting going on in his house, and he's in

25  his house, but he's not in the meeting until the end when he

Proceedings                                      31

1   comes over and says are we done over here.  This must be done.

2   Come on, let's go.  All right, Judge, I'm almost finished.

3   Just sticking to today.

4        She keeps saying the evidence is strong.  Because

5   you say the evidence is strong, don't mean that it actually is

6   strong.  It's circumstantial evidence against my client.  You

7   may say why are you setting up a meeting and allowing people

8   to have that meeting in your house if you don't know about it.

9   So, I mean, there's a thread of circumstantial evidence,

10  common sense, but it don't have to be true.  I just explained

11  to you why it's not true, and when I explain this to a jury

12  maybe they'll believe me and maybe they won't.

13       But Judge Cho, I'm not saying he believed my

14  premise, but Judge Cho heard everything she had to say.  Judge

15  Cho carefully listened to her and to me, and he decided

16  something that's a little bit unusual to rule in favor of the

17  defendant.  I understand why the government don't want to

18  accept that.  They don't like to lose.  They think every time

19  they lose something is wrong.  So now they're appealing what

20  Judge Cho decided.

21       I don't want to wait for the transcript.  I want

22  this man to go home tonight, I really do.  I want him to go

23  home tonight.  And Judge Cho said he could go home tonight.

24  We have to come back on Monday with another surety, not the

25  brothers, and make it official.  So I'm asking the Court to

Proceedings                                                32

1   reinforce the ruling of Judge Cho.  I rely on the transcripts.

2   If Your Honor does want to read the transcripts, I would then

3   say to you, I would hope that you would release the defendant

4   pending your reading the transcript.  I mean we have to be

5   back here on the 24th to present to the clerk of the court a

6   surety.  I mean, my request is to please release the defendant

7   this evening.

8           THE COURT:  So Mr. Mari, the problem I'm having with

9   your argument, which is focused considerably on whether the

10  evidence is sufficient to prove, even in a probable cause

11  level, that your client was involved in this is contrary to

12  what's recited in the complaint.  You say your client really

13  was not part of any conspiracy to bribe the juror, but

14  paragraph 5 says that Fteja indicated to John Doe No. 1, the

15  juror, that he, meaning Fteja, was directed to make the bribe

16  offer by others, including defendant Krasniqi, naming him.  I

17  presume that's why the government put it in here.

18          And Fteja relayed to John Doe No. 1 that Fteja was

19  informed by defendant Krasniqi that John Doe No. 1 was serving

20  as a trial juror, and that individuals from the Bronx would

21  pay John Doe No. 1 for a not guilty verdict.  Now.  I'm

22  assuming that John Doe No. 1 doesn't know your client, other

23  than because of this mention.

24          So I don't assume that the juror just made up the

25  name Krasniqi, but that Fteja had to be the one who said that

Proceedings                                           33

1    Krasniqi was involved.

2         Is it possible Fteja was just saying that and it's

3    false?  Yes.  But the statement is what it says, and it's

4    pretty strong evidence that your client was involved not just

5    in accommodating a meeting, not just in connecting Mr. Kupa to

6    Mr. Fteja because he wanted to please a customer, but actually

7    involved in this conspiracy and talking knowingly about

8    bribery.

9         Now, his defense may be listen, I might have

10   communicated the message but I wasn't down with the program.

11   I'm looking at the evidence that's presented that the

12   government intends to present to the jury.  Quite frankly,

13   it's stronger than some things which are just simply witness

14   statements because the complaint goes on to say there's a

15   recorded conversation, this is paragraph 8, between Fteja and

16   defendant Krasniqi.  Recorded November 15, 2025, this last

17   Saturday.

18        It revealed that the two, again, discussed for

19   arranging for John Doe No. 1 to be paid to return a verdict of

20   not guilty at the trial, not just simply connecting Mr. Kupa

21   with Mr. Fteja, so that Fteja and Kupa could conspire to bribe

22   the juror, but that your client talked to Mr. Fteja

23   specifically about bribing a juror.

24        Krasniqi informed Fteja that he would arrange a

25   meeting the following day from Kupa.  It may well be that his

Proceedings                                              34

1   defense is what you say it is.  It may well be that more

2   evidence is going to suggest something else.  Maybe the two

3   brothers will testify.  I'm looking at the evidence before me,

4   and the question is, is it strong such that your client has

5   some concern about whether he will be convicted of this crime,

6   and then how that affects his willingness to stick around and

7   see how this all works out.  That's why I asked the question

8   about will he be deported if convicted.

9          Yes, that seems an inevitable consequence if he's

10  convicted.  He will also then potentially face up to ten years

11  in jail.  With respect to the seriousness of the crime, I do

12  think this is one of the more serious crimes that can be

13  committed.  It is obstructing.

14         MR. MARI:  We agree.

15         THE COURT:  Okay.

16         MR. MARI:  Jury tampering is definitely bad.

17         THE COURT:  Hang on.  So much so that the Bail

18  Reform Act specifically says that the government can cite that

19  alone, the serious risk that the person will obstruct or

20  attempt to obstruct justice, that is the nature of the crime

21  that he's charged with by way of a probable cause complaint

22  that recites evidence that is actually quite strong on the

23  face of it.

24         Perhaps there's a counter narrative.  I don't know.

25  But one of these conversations is recorded and one of them is

Proceedings                                              35

1    reported by a third -- innocent third party, that the

2    potential bribee wouldn't have any reason to name Mr. Krasniqi

3    unless Mr. Fteja did.  Mr. Krasniqi, I know you keep raising

4    your hand, but it's really not a good idea for you to say

5    anything because anything can be used against you.  If you

6    want to say something, or have your lawyer say it, you can

7    tell him to say it.

8              Based on the strength of the government's evidence,

9    based on the potential penalty he faces, which includes losing

10   his ability to live in this country, as well as facing a

11   potential jail sentence of ten years, I do find that he

12   presents a risk of flight and a potential risk, serious risk,

13   of obstructing justice.  This is based on the charges

14   themselves.

15             I also find that the bail package that was put

16   together, and I say this with all due respect to Judge Cho,

17   who is a tremendously good magistrate judge, but judges can

18   disagree.  On this I agree that the package -- and this is

19   true, I disagree with pretrial, and I respect them immensely

20   as well, but the bail package is woefully inadequate given the

21   seriousness of the charges and the risk of flight and danger

22   presented here.

23             So danger/risk of obstruction of justice, I equate

24   them in this particular case.  Why no one thought of posting

25   property when the defendant himself owns a property of

Proceedings                                                          36

1  $1.1 million and has a 120,000 in his bank account, this is

2  his own reporting.  So I'm not making this up.

3           MR. MARI:  He owes 800 on the property that's worth

4  1.1.  It's still worth something and he still has 100,000.

5           THE COURT:  Even to the extent that I would consider

6  bail, that would not be enough.  There would have to be

7  another piece of property from someone.  But, again, that's

8  not being proffered here and right now, I find that he should

9  be remanded based on the risk factors.  I'm not saying there's

10 no bail package.

11          You can revisit this if you can come up, in my

12 opinion, but it won't be before me, this is not my case

13 necessarily, and we won't know that until he's indicted, but a

14 much more secure package than this one.

15          MR. MARI:  May I add one more thing?

16          THE COURT:  Sure.

17          MS. DEAN:  I'm so sorry.  May I just jump in, Your

18 Honor, I just want to clarify something.  You said something

19 very specific about a line in the complaint.  I just want to

20 make sure.  I want to make sure that something is clear.

21          I know your ruling, but it's just necessary for me

22 to make sure that there's no misunderstanding about the

23 details of a line that you mentioned in paragraph 8 that

24 reads:  A recorded conversation between defendant Fteja and

25 defendant Krasniqi from November 15, 2025 revealed that the

Proceedings                                                37

1    two, again, discussed arranging for John Doe 1 to be paid to

2    return a verdict of not guilty at the trial.

3             Of course, the government stands by that sentence

4    entirely.  Contextually that sentence is completely correct.

5    The two discussed the juror by name.  Whether Fteja has met

6    with him, Fteja confirms he's met with him in Staten Island

7    and the defendant then explains that he's going to get Afrim,

8    who is Afrim Kupa, to come there.  And then they further

9    discuss arranging a meeting between the three of them with

10   Afrim.

11            THE COURT:  The key part, to me, is not just

12   arranging the meeting because that's what the defense is

13   saying he was just the meeting arranger, but in the complaint

14   it says to be paid to return a verdict of not guilty so that

15   there's no mistake what the meeting is going to be about.

16            MS. DEAN:  Your Honor, we stand by our

17   representation that it's clear in this conversation and in the

18   context of the case as a whole that this is what they're

19   discussing, but the words "to be paid to return a verdict of

20   not guilty" are not on the recording.  I wanted Your Honor to

21   be very clear on that.  I don't want there to be any

22   misunderstanding.

23            We stand by the representation that it is clear from

24   the context in this recording with the other evidence taken as

25   a whole that that is what's going on, that that is the

Proceedings                                              38

1   discussion.  But those words, and as we footnote in the

2   complaint, these are in sum and substance but we didn't want

3   Your Honor to have the impression that those exact words were

4   used verbatim in the recording.  It is necessary to take all

5   the pieces together, but we stand by our assertion that it is

6   clear, including the use of the juror's first name.  There is

7   no question what this group is talking about.

8               MR. MARI:  Judge, I need to clarify one thing.

9   Let's say now I want to appeal your decision.  I don't know if

10  I will or won't.  I can't do it today, can't do it tomorrow,

11  but if I wanted to appeal your decision, I would like to have

12  a very clear record about why Judge Cho is being reversed.

13              I feel that when the people appealed Judge Cho's

14  decision, as I said at the beginning, they shouldn't be

15  allowed to reargue the whole thing de novo, nor should I.  It

16  should be the issue of did Judge Cho exceed his authority in

17  some way or make some legal error.  Because if he did do that,

18  then I would say you have a right to declare that and change

19  his decision.  And then I have a right to go to the higher

20  court and say to them who's right, Judge Cho or Judge Chen?

21              The higher court isn't going to say we want to hear

22  all the facts again.  They're going to decide on the law and

23  the record.  That's why I said at the beginning I will say

24  what I have to say, and I certainly said quite a bit, but I

25  want to rely on the record of the first proceeding and Judge

Proceedings                                                    39

1    Cho's decision on that record.

2          THE COURT:  Bear in mind that Judge Cho is a

3    magistrate judge, and so his decisions are appealable to me

4    because I'm a district court judge.

5          You raise an interesting question, and one I haven't

6    admittedly given a lot of thought to, about the standard, is

7    it clear error, is it de novo.  Quite honestly, it's treated

8    typically as a de novo review.  I make the decision myself

9    based on my review of the 3142(a) factors.  It's not that

10   Judge Cho's decision doesn't matter, but as far as I know, and

11   if you cite to me case law saying I'm wrong, it's a de novo

12   review.  In other words, because I'm a district court judge I

13   can look at this anew and decide that the correct decision is

14   for remand.

15         Which isn't to say -- and at a minimum, I'm finding

16   that the bail package that was agreed upon is insufficient to

17   address the serious risk of flight and danger/obstruction of

18   justice.  So that's my ruling.  You know, in terms of saying

19   how Judge Cho got it wrong, I can't say specifically because I

20   don't know on what basis he decided that.

21         But I view this as a serious crime, one that carries

22   with it high penalties, which increases the incentive for the

23   defendant to flee, especially as the time goes on and it looks

24   like conviction might happen, not the least of which I think

25   is deportation.  For many people that is even more important

Proceedings                                        40

1    than spending time in prison.

2           And moreover, I feel that the evidence is strong,

3    and really, this is probably the minimal amount of evidence

4    the government has.  What's recited in the affidavit in

5    support of the complaint indicates that he knowingly

6    participated in a conspiracy to bribe a juror.  You say the

7    conversations don't say what they mean.  The government,

8    obviously, has related in good faith what they say the

9    recorded conversations and the personal conversations that

10   John Doe No. 1 spoke about.  So I think the trickier

11   procedural issue, though, is if you want to appeal my

12   decision.  Right now there is no assigned district court

13   judge.  So you'd have to go to the circuit is the way it

14   works.  You can appeal to the circuit for sure.

15          MR. MARI:  You're ruling that the defendant is

16   detained.  But did you say that if this case was still in your

17   domain -- I mean at some point it's going to a district court

18   judge.  It's going to be assigned to someone.

19          THE COURT:  Right.

20          MR. MARI:  I would say my current intention would be

21   to ask the district court judge who takes over the case to

22   rule on this de novo.  Would that be the correct --

23          THE COURT:  You can do that, or you can appeal

24   because it could take another 30 days before there's a judge

25   assigned.

Proceedings                                                        41

1        MR. MARI:  Your decision is detention or is it

2   detention with a possibility of a bail package?

3        THE COURT:  To be clear, what I find is that the

4   defendant does present a serious risk of flight and a

5   danger/obstruction of justice given the nature of the case,

6   given the strength of the government's evidence.

7             And just so I'm clear, also, I'm not attributing or

8   I'm not taking into account or basing my decision in any way

9   on this associational evidence, the fact that he works as a

10  manager at a restaurants that mob or OC members go to.  I mean

11  I guess mobsters have to eat somewhere.

12            The bottom line is there's not enough there that I

13  think it means he should be detained.  It's what he, himself,

14  has done based on the evidence the government has put into the

15  complaint.  And it says they have further evidence showing his

16  knowing involvement in a conspiracy.

17            That's what I'm basing my decision on.  Now, what I

18  also offer up is, or I don't close the door on, could there be

19  some bail package that might sufficiently address both of

20  these risks, one that obviously would involve home detention,

21  although I think that even may not go far enough because

22  conspiracies can be committed through all sorts of remote

23  means.  And obviously here the phone was used considerably.

24            And there has to be more moral suasion, as they call

25  it, added to this package to ensure that he doesn't flee or

Proceedings                                    42

1   try to further obstruct justice, or endanger members of the

2   community, including the juror, or maybe the codefendant,

3   interfere with the codefendant who is out on bond and is

4   obviously a potential witness against him.

5          So if it were me, would I allow another bail

6   application?  Of course.  Any judge will hear it.  Whether

7   they would grant it or not, I don't know.  To me, I wouldn't

8   even consider it unless it had considerable security attached

9   to it.  Not only his house, because obviously if he were

10  worried about himself and he fled, it doesn't matter if he has

11  a house or not.  It would have to be somebody else, his

12  brother, his relative, someone close to him who he doesn't

13  want to harm and financially ruin by violating a condition of

14  his release.

15         So in the current situation I find that he does

16  present both risks, as I mentioned, under 3142(b)(f)(2),

17  right, and I'm never good at reciting all these,

18  3142(f)(2)(B), and 3142(f)(1)(A).

19         MS. DEAN:  I'm sorry.  I have (2)(A).

20         THE COURT:  (F)(2)(A) and (f)(2)(B).  I'm sorry.

21         MR. MARI:  Judge, my client wants me to ask, would

22  you consider right now as a bail package his house and

23  200,000?  Because he has 100,000 in the bank, hard earned

24  money.

25         THE COURT:  All that may be true, but the point of

Proceedings                                    43

1   this is to prevent him from fleeing or trying to obstruct

2   justice in this case.  Giving up his own sort of livelihood

3   and home, et cetera, will not matter.

4           MR. MARI:  He's saying to me now, Judge, he wants

5   you to know his brothers might be able to raise this money,

6   their own money, and get family members to do it.  Would that

7   be a substantial package?

8           THE COURT:  Yes.  I would be willing to entertain

9   and revisit that sometime this week because I'm on duty this

10  week.  So I would still be in charge of this matter, I think,

11  for that period of time.  So I will hear it again, but it has

12  to be extremely substantial because I do view these as very

13  serious risks in this case.

14          The nature of the crime he's accused of and that

15  there seems to be pretty strong evidence to support is

16  serious.  You understand that.  And the nature of it itself

17  suggests that he should not be at liberty while his own case

18  is pending.  If he was willing to try to help someone else

19  obstruct justice in a stranger's case, it sounds like you're

20  saying, what would he do to prevent his own conviction?

21  That's the problem.

22          I can hear you, Mr. Krasniqi.  I really wish I

23  didn't hear you, but I understand that you're maintaining your

24  innocence.  Obviously you are presumed to be innocent.  I

25  understand that but I'm looking at the evidence that's been

Proceedings                                                44

1   presented.  Right now it does put you in the middle of this

2   conspiracy.  Maybe that wasn't what you were thinking, but

3   there's no question that you were there and that you were

4   having conversations that are inculpatory.

5            MR. MARI:  Judge, one more thing.  I'm sorry.  The

6   defendant is very distraught.  He had bail set and his fiancee

7   is coming from Kosovo/Albania on Monday, and he don't even

8   know what to do with her.

9            THE COURT:  Well, he has family.

10           MR. MARI:  It's like a disaster.  He needs to try to

11  figure out how he could -- whatever conditions that are given,

12  house arrest and not go to work, would that work?  Would

13  anything work today?

14           THE COURT:  No.

15           MR. MARI:  Would anything work today?

16           THE COURT:  No.  For now, he's remanded as of today.

17  I will entertain, if the case isn't indicted within this week,

18  I will entertain a bail package, if you have one that is

19  substantial.  Home detention confinement, whatever is the most

20  onerous, would be required along with a hefty secured package

21  where other people would suffer if he decides to flee or

22  obstruct justice or do something violating the conditions of

23  his release.  It has to be that.

24           I see this case differently than Judge Cho, and even

25  pretrial.  I understand that.  This is extremely serious and

Nicole Sesta, RPR, RMR, CRR
Official Court Reporter

Proceedings                                                45

1  these charges are serious.  And the conduct he's alleged and

2  the evidence seems to support he did, again, it's at least a

3  probable cause standard but I think the cited paragraphs do

4  support that he's in the middle of this, suggests he is not

5  someone who could be at liberty and trusted not to try to

6  obstruct justice in his own case, not in someone else's case,

7  not in a stranger's case to help someone else, but in his own

8  chase.  That's the issue we have to address.

9          So whatever people in his life he has who will help

10 him, if you could put together a package, just let my deputy

11 know.  Call chambers, talk to the government, pick a date and

12 a time, and I will hear that package.

13          MR. MARI:  Yes, Your Honor.

14          THE COURT:  With the indulgence of the marshals,

15 please take the defendant.

16          MS. DEAN:  Your Honor, may I just put one thing on

17 the record?

18          THE COURT:  Yes.

19          MS. DEAN:  It's just some case law to support the

20 legal standard you've articulated for review.  As Your Honor

21 indicated, a district court reviews de novo a magistrate

22 judge's decision to release or detain a defendant pending

23 trial.  That's from *United States versus Williams,* Docket

24 20-CR-293-WFK, 2020 Westlaw 471, 9982 at one, an Eastern

25 District case from August 13, 2020.  Also, the Second Circuit

Proceedings                                                        46

1  case of *United States versus Leon*, holding that, in our view,

2  a district court should fully reconsider a magistrate's denial

3  of bail, and in ruling on a motion for revocation or amendment

4  of a detention order, should not simply defer to the judgment

5  of the magistrate but reach its own independent conclusion.

6  That 766 F 2d. 77 at 80, a Second Circuit case from 1985.

7  Thank you.

8            THE COURT:  I'll do you one better.  *U.S. versus*

9  *Minnici*, which is a summary order, admittedly, but 128 Fed.

10 Appx. 827, a Second Circuit decision from 2005, which affirms

11 what you just said and affirms Leon, as well.

12           So yes, it is a de novo review.  So for the second

13 time in your 49 year career, this has happened, but it's a de

14 novo review.  That's where it is, Mr. Mari.

15           So like I said, if you could put together a bail

16 package this week and he isn't indicted with a new district

17 judge assigned, you can bring that back to me.  Thank you.

18 Thank you to the marshals for your indulgence.

19           (Proceedings adjourned.)

20           - - - - - - - - - - - - - - - - - -

21           I certify that the foregoing is a correct transcript

22 from the record of proceedings in the above-entitled matter.

23 */S/ Nicole Sesta, RMR, CRR*
   *Court Reporter/Transcriber*

24

25 *November 19, 2025*
        *Date*